IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SCOTT PETERS,<br><br>    **Plaintiff,**<br><br>v.<br><br>J.B. PRITZKER, LATOYA HUGHES, ILLINOIS DEPARTMENT OF CORRECTIONS, ANTHONY WILLS, FRANK LAWRENCE, M. BIRKNER, LIEUTENANT GOODRYDER, LIEUTENANT WHITLEY, SERGEANT R. RESTOFF, OFFICER D. MCCLANAHAN, OFFICER GARCIA, OFFICER ROBERTS, OFFICER KESSLER, OFFICER TOWLE, OFFICER SWISSER, OFFICER RICH, JOHN DOE #1 SERGEANT, OFFICER WRIGHT, JOHN DOE #1 OFFICER, JOHN DOE #2 STOKES, OFFICER BAKER, OFFICER GARCIA, K. STUART, WEXFORD HEALTH SOURCE, INC., C. MODGLIN, A. CRAIN, G. BABBICH, M. MOLDENHAUER, K. HAMBY, M. OGALSBY, RIGGLESBERGER, A. LANG, J. KUHNEET, JOHN DOE #1 MD, JOHN DOE #2 N.P., JOHN DOE #3 SUPERVISOR, JANE DOE #'s 1-6 NURSES,<br><br>    **Defendants.** | Case No. 24-cv-2512-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

    Plaintiff Scott Peters, an inmate of the Illinois Department of Corrections who is currently incarcerated at Lawrence Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights while at Menard Correctional

1

Center. On November 21, 2024, Peters filed his Complaint alleging various claims stemming from an incident that occurred in December 2022 (Doc. 1). Although he was initially granted leave to proceed *in forma pauperis* (Doc. 5), that leave was later revoked because Peters failed to disclose his litigation history. It also was determined that Peters had on three occasions brought an action that was dismissed on the grounds that it was frivolous, malicious, or failed to state a claim (Doc. 7). Moreover, Peters failed to demonstrate that he was in imminent danger (*Id.* at p. 3). He was directed to pay the full filing fee or face dismissal of his claims. On February 11, 2025, Peters paid his full filing fee.

Thus, this case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

## The Complaint

Peters alleges that at all times relevant to his claims he was an individual with a handicap under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* (Doc. 1, p. 10). He was injured while serving in the military and suffered damage to his spine, pelvis, hips, legs, head, neck, and internal organs (*Id.*). He suffers from degenerative nerve, bone, and joint pain (*Id.*). On December 10, 2022, Peters was prescribed Gabapentin and over-the-counter Tylenol for his pain (*Id.*). Prior to his

incarceration, however, he was prescribed Hydrocodone, Valium, Meloxicam, Neurontin, and Tylenol #3 for his pain (*Id.*). On December 4 or 10, 2022,[1] Peters expressed that he was in mental and physical distress because the prescribed medications were not providing the level of relief that his previous medications provided (*Id.* at p. 12). He noted that the Gabapentin and Tylenol left him in severe pain (*Id.*). Peters alleges the defendants refused to provide him with his previous pain medications (*Id.*). He alleges that he informed a nurse and correctional officer at his cell about his need for pain medication, but they ignored him (*Id.* at p. 18). They later informed him that he was going to segregation (*Id.*).

After complaining about his current medications, Peters was sent to disciplinary segregation. He alleges that his placement in segregation was based on false information and was an effort to silence his complaints (*Id.* at p. 12). Peters alleges that McClanahan, Roberts, and Garcia wrote a ticket against him. He alleges that Lieutenant Birkner and Sergeant Restoff "oversaw" the ticket (*Id.* at p. 13). Roberts took control of Peters's wheelchair and pushed him to the parking lot (*Id.* at pp. 13, 19). Roberts pushed Peters into a curb, causing him to fall from his wheelchair into the street (*Id.*). Peters hit his head on the pavement (*Id.*). He also injured his knee, shoulder, and spine (*Id.* at p. 19). Garcia dragged Peters back into his chair and told him to shut up (*Id.* at p. 13). Peters alleges that he requested medical and mental care, as well as crisis assistance, but Hamby denied his

---

[1] Peters initially indicates that the events in his Complaint took place on December 10 (Doc. 1, pp. 12-13). He later recounts the same events but notes that he was refused medication, removed from his ADA cell, and taken to segregation on December 4, 2022 (*Id.* at pp. 18-20).

3

requests (*Id.*). Prior to leaving his cell, Kessler and Towle entered his cell and went through his property (*Id.* at p. 14, 19). They discarded some of his property and had inmate workers box up the rest for transport (*Id.*).

After the incident, Peters was taken to a room where he was stripped. He was then taken to the North 2 segregation cellhouse and placed in a non-ADA compliant cell (Doc. 1, p. 13). He alleges that John Doe #1 Officer, John Doe #2 Officer, and John Doe #1 Sergeant placed him in the cell and dumped him out of his wheelchair onto the floor (*Id.*). He asked them for medical care for his injuries, but they refused and placed him into the cell (*Id.* at p. 19). He alleges that the cell was not handicap accessible (*Id.* at p. 20). He asked numerous nurses for care, but they did not stop to help (*Id.*). One nurse did provide him his psychiatric medication (*Id.*). Baker later appeared to take Peters for an x-ray of his injuries (*Id.* at p. 14).[2] He handcuffed Peters on the floor, which prevented Peters from getting into the wheelchair (*Id.*). He failed to assist Peters into his wheelchair, and the x-ray was ultimately denied (*Id.* at pp. 14, 20). On December 7, 2022, a counselor came by and Peters asked for medical treatment and supplies, but the counselor merely asked if Peters wanted to hear his ticket (*Id.* at p. 20). Officer Stokes later appeared for the x-ray call pass but again refused to allow Peters to leave his cell (*Id.* at p. 14). On December 10, 2022, Peters was returned to his ADA cell (*Id.* at p. 20).

---

[2] Peters initially does not indicate the date of his encounter with Baker (Doc. 1, p. 14). He later states that on December 6, 2022, a "correctional officer" handcuffed him but then denied him care or an x-ray when Peters informed the officer that he could not get into the chair on his own (*Id.* at p. 20).

On January 9, 2023, Moldenhauer and Lang refused him adequate medical care for his injuries (*Id*. at p. 14).

## **Preliminary Dismissals**

As an initial matter, Peters fails to state a claim as to a number of listed defendants. Although he lists numerous officials as defendants in his case caption, he only states in conclusory fashion that these officials acted with deliberate indifference to his medical needs. He merely lists the defendants and then alleges that they acted with deliberate indifference. A successful complaint generally alleges "the who, what, when, where, and how…" *See DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). But Peters fails to indicate when he saw a specific defendant, where he saw them, what care he sought from them, and their response, if any (*See* Doc. 1, p. 28). He further notes that "state defendants" were deliberately indifferent to his medical needs without describing the who, what, when, or where of his interactions with these individuals. Peters alleges that on January 9, 2023, Moldenhauer and Lang refused adequate medical care, but offers no factual allegations regarding what care he sought from them on that date or their response, if any (Doc. 1, p. 14). Peters's conclusory statements that the defendants failed to provide him care or were deliberately indifferent to his needs is simply not enough to state a claim.

Peters also refers to a number of high-ranking officials, noting that they were responsible for ensuring adequate medical care. For example, Peters identifies J.B. Pritzker, Latoya Hughes, Anthony Wills, and Frank Lawrence as defendants (Doc. 1, pp. 2-4, 9). He notes that these officials are sued in their official capacities and are

5

responsible for ensuring adequate medical care and safety. But these officials cannot be liable in their roles as supervisors because the doctrine of *respondeat superior* (or supervisory liability) does not apply to Section 1983 claims. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). Similarly, Peters alleges that Lieutenant M. Birkner, Lieutenant Goodryder, Lieutenant Whitely, and Sergeant R. Restoff were all supervisors or oversaw other defendants' actions, but they cannot be liable in their positions as supervisors (*Id.* at p. 4, 9).

As to the medical defendants, Peters alleges that Wexford, Modglin, and Crain were all supervisors who oversaw the day-to-day operations of the healthcare unit (*Id.* at p. 11). Wexford can only be liable, however, if it had a policy or practice that caused the constitutional deprivation alleged in the pleading. *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 653-4 (7th Cir. 2021); *Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004). Peters fails to point to a policy that led to the denial of care or denial of specific pain medication. And, as previously discussed, officials cannot be liable simply in their roles as supervisors. Peters further lists all of the individual defendants and notes that in December 2022, staff refused to provide him with proper pain medication (*Id.* at p. 18). He also alleges that Frank Lawrence and Jolene Kuhnert were ADA coordinators at the prison and in charge of ensuring that qualified individuals received care (*Id.* at p. 12). But he fails to provide any facts regarding his interactions with specific caregivers, their knowledge of his medical needs, or how they responded to his requests. There are simply no allegations suggesting that any of these officials were aware of his specific need for medical care and acted with deliberate indifference. *See Qian v. Kautz*, 168 F.3d 949,

6

955 (7th Cir. 1999) (stating that the relevant inquiry is whether defendants "actually knew about the plaintiff's condition, not whether a reasonable official should have known").

Peters does allege that on December 4 he spoke to a nurse and correctional officer asking for pain medications, but it is not clear as to the identity of the nurse or officer. Although Peters may certainly identify unknown defendants by John Doe designation (John Doe #1, Jane Doe #1, etc.), he has only done so generically in his statement of claim. His caption lists six Jane Doe nurses, but it is not clear which one he interacted with on this date.

The only individuals who Peters specifically alleges violated his constitutional rights are Officer McClanahan, Officer Garcia, Officer Roberts, Sergeant John Doe #1, Officer John Doe #1, Officer John Doe #2, Baker, and Stokes. He specifically alleges that these officers were deliberately indifferent to his medical needs. Thus, the claims against these officials will proceed as described below. All other defendants and potential constitutional violations are **DISMISSED without prejudice** for failure to state a claim.

## Discussion

Based on the allegations in the Complaint, the Court designates the following counts:

**Count 1:**   Eighth Amendment excessive force claim against Officer McClanahan, Officer Garcia, and Officer Roberts for removing Peters from his cell and pushing him out of his wheelchair causing injuries.

**Count 2:**   Eighth Amendment deliberate indifference claim against Officer McClanahan, Officer Garcia, and Officer Roberts for failing to obtain medical care for Peters's injuries.

7

>**Count 3:** Eighth Amendment deliberate indifference claim against Sergeant John Doe #1, Officer John Doe #1, and Officer John Doe #2 for failing to obtain medical care for Peters's injuries and placing him in a non-ADA compliant cell.
>
>**Count 4:** Eighth Amendment deliberate indifference claim against Officer Baker and Officer Stokes for failing to take Peters for an x-ray or provide him with care for his injuries.
>
>**Count 5:** ADA claim for Peters being placed in a non-ADA compliant cell in North 2 segregation.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[3]

At this stage, Peters states viable claims against Officer McClanahan, Officer Garcia, and Officer Roberts for pushing him out of his wheelchair, injuring him, and failing to provide him with medical care. Thus, Count 1 for excessive force and Count 2 for deliberate indifference to medical needs shall proceed against Officer McClanahan, Officer Garcia, and Officer Roberts. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Chatham v. Davis*, 839 F.3d 679, 684 (7th Cir. 2016); *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (delay in treatment).

---

[3] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

Peters also states a viable claim in Count 3 against Sergeant John Doe #1, Officer John Doe #1, and Officer John Doe #2 for failing to provide him with medical care and placing him in a non-compliant cell. He further states a claim against Officer Baker and Officers Stokes in Count 4 for failing to provide him with medical care while in the segregation cell. The Court **ADDS** Menard Warden Anthony Wills, in his official capacity only, to respond to discovery aimed at identifying the unknown officers.

Finally, Peters states a viable claim under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, in Count 5 for his placement in a non-compliant cell. *Lacy v. Cook County, Illinois*, 897 F.3d 847, 853 (7th Cir. 2018). The claim cannot proceed against the individual defendants, however, because individual employees of IDOC cannot be sued under the ADA. *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 670 (7th Cir. 2012). The proper defendant is the relevant state department or agency. *See* 42 U.S.C. § 12131(1)(b); *Jaros*, 684 F.3d at 670, n. 2 (individual capacity claims are not available; the proper defendant is the agency or its director (in his official capacity)). As such, Latoya Hughes, the current IDOC Director, will be **ADDED** to the case, in her official capacity, as the proper defendant for the ADA claim.

### Disposition

For the reasons stated above, Counts 1 and 2 shall proceed Officer McClanahan, Officer Garcia, and Officer Roberts. Count 3 shall proceed against Sergeant John Doe #1, Officer John Doe #1, and Officer John Doe #2. Count 4 shall proceed against Officer Baker and Officer Stokes. Count 5 shall proceed against Latoya Hughes, in her official capacity.

In order to help identify the unknown defendants, warden Anthony Wills is **ADDED** to the case in his official capacity only.

The Clerk of Court shall prepare for Defendants Officer McClanahan, Officer Garcia, Officer Roberts, Officer Baker, Officer Stokes, Latoya Hughes (official capacity only), and Anthony Wills (official capacity only): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons) and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Peters. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Peters, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g).

**Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

Because Peters's claims involve his medical care, the Clerk of Court is **DIRECTED** to enter the Court's standard HIPAA Qualified Protective Order.

If judgment is rendered against Peters, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Peters is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

DATED:  April 28, 2025

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**

## Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**